IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal No. 18-217 |
| | ) | |
| VERNON JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

On August 29, 2018, the government appealed the magistrate judge's order setting conditions of release for defendant Vernon Jackson ("Jackson"). (ECF No. 25). On September 12, 2018, after an evidentiary hearing, the court granted the government's appeal and ordered Jackson be detained pending trial. The court orally explained the reasons for its decision and stated that a written decision would follow.

I.  Factual and Procedural Background

On August 15, 2018, Jackson was indicted at Criminal No. 18-217 and charged with possession with intent to distribute cocaine on March 8, 2018, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Because Jackson has a prior felony drug conviction, he faces a maximum term of imprisonment of not more than thirty years, if convicted.

In 2006, Jackson pleaded guilty to conspiracy to distribute one kilogram or more of heroin and conspiracy to launder monetary instruments at Criminal No. 04-299. Jackson was originally sentenced to 188 months of imprisonment, later reduced to 151 months, to be followed by five years of supervised release. He was released from prison in 2015. At the time of the

charged offense in this case, Jackson was serving the term of supervised release imposed at Criminal No. 04-299. The conditions of release in that case included, among other things, that he: (1) not commit another crime; (2) not illegally possess a controlled substance; (3) notify the probation office within 72 hours of any change of residence; (4) not associate with convicted felons; and (5) notify the probation office within 72 hours of being arrested or questioned by a law enforcement officer. (Crim. No. 04-299, ECF No. 367). The probation office filed a petition to revoke his supervised release in Criminal No. 04-299, but that petition is stayed.

Pretrial services prepared a report which noted five reasons why Jackson posed a risk of nonappearance and nine reasons why he posed a risk of danger to the community. The pretrial services report nevertheless recommended that Jackson be placed on bond with conditions. On August 28, 2018, the magistrate judge held a bond hearing. The court reviewed the transcript in full. (ECF No. 28). The magistrate judge determined that Jackson was not a flight risk and, although he did pose a danger, conditions could be reasonably imposed to assure the safety of the community. Jackson was placed on bond. The government filed an appeal of the magistrate judge's decision.

II. <u>Legal Analysis</u>

The court's standard of review of a magistrate judge's denial of pretrial detention is <u>de novo</u>. <u>United States v. Delker</u>, 757 F.2d 1390, 1394 (3d Cir.1985).

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or

combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

### A. Rebuttable Presumption

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . *(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.).*

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe defendant committed an offense that falls within the category of offenses listed in § 3142(e)(3)(A) because a grand jury returned an indictment charging Jackson with possessing with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine, a Scheduled II controlled substance, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The maximum statutory penalty for a first felony drug offense at count one is 20 years. For a second or subsequent offense, the maximum statutory penalty is 30 years. The court takes judicial notice that Jackson has a prior felony drug conviction at Criminal No. 04-299.

Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). At the hearings before the magistrate judge and this court, defendant did not contest the application of the rebuttable presumption to this case.

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

### B. The § 3142(g) factors

In evaluating defendant's evidence to rebut the presumption, the court must consider the four factors set forth in § 3142(g) in determining whether pretrial detention is warranted. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim

> or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### C. Evidence Adduced

#### 1. Before the magistrate judge

The indictment at Criminal No. 18-217 stems from the execution of a search warrant at a residence on 3023 Pioneer Avenue in Pittsburgh, Pennsylvania, on March 8, 2018. Prior to obtaining the search warrant, detectives conducted several "trash pulls" at the home which recovered indicia of Jackson's residence and items that tested positive for cocaine. The government's investigation lasted five or six months.

During the search, officers recovered two chunks of cocaine, in distribution quantity, from a can with a false bottom. They also recovered, in plain view, paraphernalia indicative of heroin and cocaine distribution (i.e., stampers, glassine bags, digital scales, diaper bags and rubber bands).

5

Jackson was the only person in the residence when the search warrant was executed. He stated that he and his "wife," Leslie McCoy ("McCoy") were the only persons who lived there. Jackson was arrested on March 8, 2018 and charged with state offenses. He was released on bond. McCoy was also arrested on March 8, 2018, and criminally charged in state court. She denied knowledge of the cocaine. The state charges against McCoy were withdrawn after Jackson waived his right to a preliminary hearing in state court. The state charges against Jackson became the basis for the charge in this case. Jackson was indicted in this federal case on August 15, 2018.

2. Hearing on September 12, 2018

Jackson called three witnesses: (1) the office manager of his employer, who testified that Jackson was employed there full-time for at least one year; (2) the pastor of his church, who testified that he has attended services for three months; and (3) his sister, Valerie Jackson. Valerie Jackson testified that defendant lives with her at 2937 Glenmawr Street, Sheriden, PA, and abides by her strict house rules regarding no alcohol or drugs. She testified that for approximately five months prior to March 2018, when the search warrant was executed, defendant did not sleep at her house every night but also resided with McCoy. Valerie Jackson also testified that Duane Moore ("Moore"), Jackson's convicted co-defendant in Criminal No. 04-299, was like a brother to her, and that both she and defendant continued to interact with Moore at family gatherings. Jackson introduced evidence of a 2012 felony conviction by McCoy.

Pretrial services officers Eric Bossert and Shannon Myers ("Myers") testified that Jackson did not report the Pioneer street address as his alternative residence until May 2018. DEA Special Agent Daniel Hoormann testified about an incident on February 22, 2017, in which Jackson had contact with Moore and was questioned by law enforcement officers about the overdose death of

Tiquan Wellington. Myers testified that Jackson never reported this incident to the probation office, as required, and that Jackson never received permission to interact with Moore or McCoy.

### D. Risk of Flight

"The purpose of a Section 3142(e) risk of flight determination ... is to secure the appearance of the accused at trial." United States v. Himler, 797 F.2d 156, 161-62 (3d Cir. 1986) (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution)); United States v. Vortis, 785 F.2d 327 (D.C. Cir. 1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia).

In this case, Jackson poses a potential risk of nonappearance because he is charged with a serious drug offense, has a significant criminal history, and is violating the conditions of supervised release imposed at Criminal No. 04-299. On the other hand, Jackson presented evidence of long-term, strong family ties to the Pittsburgh, Pennsylvania area, he is employed full-time, he does not have a passport and he has always attended scheduled court appearances. This evidence is sufficient to rebut the presumption in this case that he is a risk of flight. The government presented no contrary evidence of flight risk and did not prove by a preponderance of the evidence—even considering the evidentiary weight of the presumption and the factors previously discussed—that defendant is a risk of flight.

### E. Danger to the Community

As explained previously, because Jackson is charged with a controlled substance offense with a maximum penalty of 30 years of imprisonment, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. 18 U.S.C. § 3142(e)(3). If the presumption is rebutted,

the government has the burden to prove Jackson's dangerousness by clear and convincing evidence. *See United States v. Rice*, No. 17-1450, 2017 WL 6349372 (W.D. Pa. Dec. 13, 2017).

1. Nature and circumstances of the instant offense

Jackson is charged in the instant indictment at Criminal No. 18-217 with possession with intent to distribute cocaine. It is a controlled substances offense that triggers the rebuttable presumption of detention. The drugs and paraphernalia for distribution that led to the charge were recovered from the home in which Jackson was present. Jackson did not present any evidence with respect to the first factor. This factor weighs in favor of defendant being detained pending trial.

2. Weight of the evidence

The weight of the evidence against Jackson is strong. Detectives conducted several "trash pulls" at the Pioneer street home which recovered indicia of Jackson's residence and items that tested positive for cocaine. During the March 8, 2018 search, officers recovered two chunks of cocaine, in distribution quantity, from a can with a false bottom. They also recovered, in plain view, paraphernalia indicative of heroin and cocaine distribution (i.e., stampers, glassine bags, digital scales, diaper bags and rubber bands). He was the only person in the residence when agents executed the search warrant. Jackson may be convicted based on evidence that his possession of the seized items was actual or constructive or that he possessed them jointly with McCoy. This factor weighs in favor of defendant being detained pending trial.

3. History and characteristics of Jackson

The history and characteristics of Jackson are mixed. On one hand, he is steadily employed and attended all court appearances. He has strong ties to the Pittsburgh area. He poses a low risk

of flight. On the other hand, the instant offense is similar to the conduct for which Jackson was convicted in Criminal No. 04-299. He was on supervised release at the time of the instant offense. The evidence presented at the hearing reflects by clear and convincing evidence that Jackson violated numerous conditions of his release -- (1) not commit another crime; (2) not illegally possess a controlled substance; (3) notify the probation office within 72 hours of any change of residence; and (4) notify the probation office within 72 hours of being arrested or questioned by a law enforcement officer. In addition, Jackson was not permitted to associate with persons engaged in criminal activity or to associate with any person convicted of a felony without permission from the probation office. Because McCoy was convicted of a felony drug offense in 2011, Jackson was not permitted to associate, much less live with, her if he knew about her conviction. The court cannot conclude on this record that Jackson knew about McCoy's conviction. The record is clear that Jackson was associating with Moore, his co-defendant in Criminal No. 04-299, which violated a condition of his supervised release.

The most troubling aspect of Jackson's character is his lack of full candor to the probation office. He failed to disclose timely to the probation office that he was living with McCoy at the Pioneer street address; and he failed to report his contact with Moore and questioning by law enforcement officers on February 22, 2017 involving the overdose death of Tiquan Wellington. The violations of his supervised release in Criminal No. 04-299 reflect that Jackson is not likely to abide by any conditions of release imposed in this case. On balance, this factor weighs in favor of defendant being detained pending trial.

4. Nature and seriousness of the danger

The final factor is the nature and seriousness of the danger posed by Jackson's release. Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986).

In this case, the danger is the threat of additional illegal drug distribution by Jackson, including heroin, which poses a clear and serious threat to the safety of the community. The court must predict the likelihood Jackson will traffic in illegal drugs if released. He has a criminal history of drug trafficking; he was alone in the Pioneer street home on March 8, 2018, with cocaine and heroin distribution paraphernalia in plain view; distribution quantities of cocaine were recovered from the Pioneer home; he violated conditions of his supervised release; and he continued to associate with a convicted drug trafficker. Even if Jackson rebutted the presumption, it retains evidentiary weight. The court concludes that viewing the record as a whole, Jackson if released will likely traffic in illegal drugs. This factor weighs in favor of pretrial detention even in the absence of the rebuttable presumption of detention.

III. Conclusion

Jackson failed to rebut the presumption of detention with respect to danger to the community in this case. Although he presented evidence that he is not a flight risk, his family ties and full-time employment do not negate the danger that he will participate in illegal drug distribution which poses a danger to the community. Even if the presumption was rebutted, it retains evidentiary value and the government provided clear and convincing evidence about each of the § 3142(g) factors to indicate that Jackson poses a danger to the community. Because the

weight of the evidence against Jackson is strong and he violated the existing conditions of his supervised release, the court cannot conclude that the imposition of additional conditions will adequately protect the safety of the community. In summary, even if Jackson rebutted the presumption of detention, there was clear and convincing evidence adduced in this case to show that he is a danger to the community because if released he is likely to traffic in illegal drugs.

      An appropriate order follows.

September 18, 2018.

                                      <u>/s/ Joy Flowers Conti</u>
                                      Joy Flowers Conti
                                      Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal No. 18-217 |
| | ) | |
| VERNON JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

AND NOW, this 18th day of September, 2018, for the reasons set forth in the accompanying memorandum opinion and on the record at the hearing on September 12, 2018,, IT IS HEREBY ORDERED that the government's appeal of the magistrate judge's order setting conditions of release (ECF No. 25), is GRANTED. The magistrate judge's order setting conditions of release (ECF No. 24) is REVERSED and VACATED.

Defendant Vernon Jackson ("Defendant") shall be committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney from the government, the person in charge of the corrections facility must deliver the Defendant to the United States Marshal for any court appearance.

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge
